EAGAN AVENATTI, LLP
Jason M. Frank (Bar No. 190957)
jfrank@eaganavenatti.com
Scott H. Sims (Bar No. 234148)
ssims@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone: 949.706.7000
Facsimile: 949.706.7050

YUHL CARR LLP
Eric F. Yuhl (Bar No. 102051)
eyuhl@yuhlcarr.com
Colin A. Yuhl (Bar No. 259196)
cayuhl@yuhlcarr.com
4676 Admiralty Way, Suite 550
Marina del Rey, CA 90292
Telephone: 310.827.2800
Facsimile:  310.827.4200

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BIRBROWER, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>QUORN FOODS, INC., a Delaware Corporation and DOES 1 through 100, inclusive,<br><br>                    Defendant. | CASE NO.:<br>2:16−cv−01346−DMG−AJW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 et seq.);**<br>2. **VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 et seq.);**<br>3. **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 et seq.) and**<br>4. **FRAUD/FRAUDULENT CONCEALMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff individually and on behalf of all others similarly situated, alleges on knowledge as to herself but otherwise on information and belief, as follows:

## I. OVERVIEW

1.     This class action arises out of the fraudulent, deceptive and misleading conduct of Defendant Quorn Foods, Inc. ("Defendant" or "Quorn"), a company that sells meat-substitute food products.  Specifically, Quorn has been misrepresenting on all of its product packaging that "mycoprotein" – the main ingredient in all of the company's products – is the same or substantially similar to a mushroom, truffle or morel.  In truth, "mycoprotein" is a term invented by Quorn to mislead consumers and hide the fact that its products are actually made of mold.

2.     As a result of Quorn's unfair, unlawful, and deceptive practices, Quorn (a) uniformly misled Plaintiff and other consumers into believing Quorn's products were made of an ingredient the same or similar to mushrooms, truffles or morels and (b) induced Plaintiff and others consumers to purchase Quorn's products.  Had Quorn disclosed the truth to Plaintiff and consumers – *i.e.,* that its products are actually made of mold – Plaintiff and consumers would not have purchased Quorn's products, and certainly not at the price they paid.

## II. JURISDICTION AND VENUE

3.     This action was originally filed in the Superior Court of the State of California, County of Los Angeles.  Defendant removed this action pursuant to the Class Action Fairness Act, contending there is minimal diversity and that total matter in controversy exceeds $5,000,000.

## III. PARTIES

4.     Plaintiff Kimberly Birbrower ("Plaintiff"), an individual, is a resident and citizen of the County of Los Angeles, State of California.

**FIRST AMENDED CLASS ACTION COMPLAINT**

5.      Defendant Quorn Foods, Inc. is a Delaware Corporation, headquartered in Illinois, and registered to do business in California.  Quorn marketed, advertised, and/or distributed its food products during the Class Period in Los Angeles County, California.

6.      The true names and capacities of defendants DOES 1 through 100, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as Doe are in some manner responsible for the acts and occurrences set forth herein.  Plaintiff will ask leave of court to amend this Complaint to show the true names and capacities of defendants Doe 1 through 100, inclusive, as well as the manner in which each Doe defendant is responsible, when the same have been ascertained.

7.      Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

8.      Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing

**FIRST AMENDED CLASS ACTION COMPLAINT**

## IV.  ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.      Plaintiff purchased Quorn's "Chik'n" products at Whole Foods Market in Los Angeles County in 2012.

10.      Like all of Quorn's products, the main ingredient in Quorn's "Chik'n" products is "mycoprotein" – which is a term invented by Quorn to hide the fact that the product is actually made of mold.

11.      Plaintiff was misled at the time of her purchases by the misleading statements on Quorn's product packaging related to the "mycoprotein" contained in the products.  Specifically, the Quorn products purchased by Plaintiff were packaged in a box containing the same misleading representation about "mycoprotein" that is and has been uniformly made on all Quorn product packaging:

> Quorn [products] are made with mycoprotein ("myco" is Greek for "fungi") and are completely meatless and soy-free.  There are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after foods like varieties of mushroom, truffles, and morels.

A sample photo of a Quorn product package is attached hereto as Exhibit A.

12.      The foregoing representation by Quorn was, at a minimum, deceptive and misleading.  At all times, this representation was designed to deceive members of the public, just as it deceived Plaintiff.  The representation, among other things, suggests that Quorn products are made of (or similar to) mushrooms, truffles or morels.  In reality, the product is not a variety or type of mushroom, truffle or morel.  "Mycoprotein" is instead a brand name coined by Quorn for an ingredient that is actually fermented soil mold with added vitamins and flavors.  Quorn's representations on its boxes are clearly designed to deceive consumers into believing they are purchasing a mushroom-based product, and not a mold-based product.

13.      In addition to making false affirmative representations, Quorn had a duty to disclose the fact that "mycoprotein" is actually mold.  Quorn had such a duty because (a) Quorn had exclusive or superior knowledge of that material fact and the material

fact was not reasonably known to Plaintiff and the Class; (b) Quorn actively concealed the material fact from Plaintiff and the Class; and/or (c) Quorn's statements on its product packaging regarding "mycoprotein" were misleading without the disclosure of the omitted material fact.  Quorn violated its duty to disclose by failing to disclose and actively concealing the fact that "mycoprotein" is actually fermented soil mold.

14.    In or around 2015, after a number of customers became ill and, in at least one instance, died after consuming a Quorn product, Quorn began adding a disclosure in the "allergy" section of its product packaging stating as follows:

> Allergic Consumers: There have been rare cases of adverse reaction to Quorn, which contains mycoprotein, a member of the fungi/mold family.  Mycoprotein is high in protein and fiber which may cause intolerance in some people.

This language was intentionally buried in the allergy section, so that it would not be read by ordinary consumers.   In fact, demonstrating its fraudulent intent, Quorn continued to prominently feature the false and misleading statement at the top of every package representing that "mycoprotein" is like a mushroom, truffle, or morel.  Quorn's allergy disclosure actually continues this deception by, for example, first referring to "mycoprotein" as a "fungi."  As a result, Quorn continued to deceive members of the Class into believing that the products they were purchasing were like a "mushroom, truffle, or morel" and not mold.

15.    Quorn's deceptive and misleading representations about "mycoprotein" are intentionally designed to conceal the fact that the product is made of mold, and mislead consumers into believing that the product is similar to a mushroom, truffle or morel.  This is "material" information, because reasonable consumers would consider the fact that a food product is made of mold to be important information when deciding whether to purchase an item that will be consumed by themselves and/or their family. The fact that Quorn intentionally attempted to deceive consumers into believing that its

products are similar to a "mushroom, truffle or morel" demonstrates that Quorn knew that the fact that the product is mold is "material" information.

16.    Plaintiff justifiably relied on the statements and omissions on Quorn's product packaging regarding "mycoprotein" and believed she was buying a mushroom-based protein product, not a mold-based product.  But for the deceptive and misleading representations and omissions on Quorn's product packaging, Plaintiff and the Class would not have purchased any of the Quorn products, and, at a minimum, certainly not at the prices they paid.  Plaintiff thus suffered injury in fact and lost money or property because, in reliance on Quorn's misrepresentations and failures to disclose, she purchased products she otherwise would not have purchased, and certainly not at the price she paid.

17.    Plaintiff did not discover that Quorn products were made of mold until 2015, and could not in the exercise of due diligence reasonably have discovered them earlier.

## V.  CLASS ACTION ALLEGATIONS

18.    Plaintiff brings her first through third causes of action (for violations of California's Consumer Legal Remedies Act, Unfair Competition Law and False Advertising Law) on behalf of herself and a class of all California citizens who purchased Quorn products within the State of California in the four years preceding the filing of this Complaint (the "California class").  She brings her fourth cause of action for common law fraud/fraudulent concealment on behalf of a class of all persons who purchased Quorn products in the United States in the four year preceding the filing of this Complaint.  Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 (the "Nationwide Class").  The California Class and the Nationwide Class are referred to collectively herein as the "Class" and separately as "each Class."

19.    Excluded from the each Class is any person or entity in which any judge, justice or judicial officer presiding over this matter and members of their immediate

families and judicial staff, have any controlling interest.  Also excluded from each Class is any partner or employee of Class Counsel.

20.     Class certification is appropriate pursuant to Rule 23(b)(3) because questions of law or fact common to each Class predominate over any questions affecting only individual class members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Class certification is appropriate pursuant to Rule 23(b)(2) because Defendants acted (or refused to act) on grounds generally applicable to each Class thereby making appropriate injunctive relief with respect to each Class as a whole.

21.     Plaintiff reserves the right to modify the definition of each Class after further discovery, and further reserves the right to only seek class certification for injunctive relief and not to seek class certification for monetary damages.

22.     Questions of law or fact common to Class Members predominate over any questions affecting only individual Class Members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

23.     <u>Numerosity of the Class</u>.  The Class is so numerous that joinder of all members in one action is impracticable.  While the exact number and identities of Class Members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery directed at Defendants, Plaintiff believes and therefore alleges that there are in excess of 50,000 members of the Class, and well in excess of 40 members in each Class.

24.     <u>Typicality of Claims</u>.  Plaintiff's claims are typical of those of other Class Members, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

25.     <u>Adequacy of Representation</u>.  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of each Class and has retained attorneys who are highly experienced in the handling of class actions, and Plaintiff and her counsel intend to prosecute this action vigorously.

26.     <u>Predominance of Common Questions of Law or Fact</u>.  Common questions of fact and law exist as to all Class Members that predominate over any questions affecting only individual Class Members.  These common legal and factual questions, which do not vary among Class Members, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

•      Whether Defendants' uniform representations about "mycoprotein" on their product packaging were likely to deceive a reasonable consumer into believing that the products were mushroom-based products and not mold-based products;

•      Whether the fact that Defendants' products were made of mold would be considered "material" information to a reasonable consumer of food products;

•      Whether Defendants had a duty to disclose that their products were made of mold;

•      Whether Defendants' alleged misrepresentations and non-disclosures constitute a violation of California's Consumer Legal Remedies Act, California *Civil Code* section 1750 *et seq.* (the "CLRA")

•      Whether Defendants' conduct was a "fraudulent" business practice within the meaning of California's Unfair Competition Laws, California *Business & Profession Code* section 17200 *et seq.* (the "UCL"), in that it is and was likely to mislead a reasonable consumer;

•      Whether Defendants' conduct was an "unfair practice" within the meaning of the UCL, in that it offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

•      Whether Defendants' conduct constituted false advertising in violation of California's False Advertising Law, California *Business & Professions Code* section 17500 *et seq.* (the "FAL");

**FIRST AMENDED CLASS ACTION COMPLAINT**

• Whether Defendants' conduct was an "unlawful" practice within the meaning of the UCL, in that it violates *inter alia* the CLRA, the FAL, and other California civil statutes and common law prohibiting fraud and deceit;

• Whether Defendants' conduct caused harm to the Class;

• Whether the market value of Defendants' products would be less than prices paid by the Class if Defendants had correctly and clearly disclosed that their products were made of mold, such that the members of the Class suffered out-of-pocket loss as a result of Defendants' misrepresentations and non-disclosures;

• Whether the members of the Class are entitled to restitution; and

• Whether injunctive relief is appropriate and necessary in order to cure the harm caused by Defendants continuing misleading statements and non-disclosures regarding "mycoprotein."

27. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every Class Member could afford individual litigation, the adjudication of more than a million identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the Class Members. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual Class Members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to such adjudications

1  or that would substantially impair or impede the ability of such non-party Class
2  Members to protect their interests.

3                    **FIRST CAUSE OF ACTION FOR**
4               **VIOLATIONS OF CONSUMERS LEGAL REMEDIES ACT**
5                  **(CALIFORNIA CIVIL CODE § 1750 et seq.)**

6           28.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 27
7  as if fully set forth herein.

8           29.    Plaintiff and the California Class are "consumers" as defined by the
9  CLRA, *Civil Code* § 1761(d).  Defendants' products are "goods" as defined by the
10 CLRA, *Civil Code* § 1761(a).  Defendants' sale of those products to Plaintiff and the
11 California Class constitute consumer "transactions" covered by the CLRA.

12          30.    On all of its product packaging, and other sales materials (such as website
13 pages), Defendants uniformly represented to Plaintiff and the California Class as
14 follows:

15                 Quorn [products] are made with mycoprotein ("myco" is Greek
16                 for "fungi") and are completely meatless and soy-free.  There
17                 are believed to be over 600,000 varieties of fungi in the world,
18                 many of which are among the most sought after foods like
19                 varieties of mushroom, truffles, and morels.

20 (Exhibit A).  This representation is false and misleading, and misstates the qualities,
21 characteristics and ingredients of Quorn products, in that "mycoprotein" is not the same
22 or similar to mushrooms, truffles or morels, but is instead fermented soil mold.

23          31.    Defendants also had a duty to disclose that "mycoprotein" is fermented
24 soil mold because this is material information to a reasonable consumer of food
25 products and:

26          (a)    Defendants had exclusive and superior knowledge of this material fact and
27                 understood that this material fact was not reasonably known to and could
28                 not have been reasonably discovered by Plaintiff and the California Class;

(b)  Defendants actively concealed this material fact from Plaintiff and the California Class; and/or

(c)  The aforementioned statement on Quorn product packaging regarding "mycoprotein" was misleading without the disclosure of the omitted material fact.

32.  Defendants violated their duty to disclose by failing to inform Plaintiff and the California Class that "mycoprotein" is fermented soil mold.

33.  Defendants' conduct by way of their affirmative representations and non-disclosures are and were likely to mislead a reasonable consumer.

34.  Defendants' conduct constitutes a violation of the CLRA, including but not limited to subdivisions (5), (7), (9), and (16) of the California *Civil Code* §1770(a). See, e.g., Outboard Marine Corp. v. Sup. Ct. (1975) 52 Cal. App. 3d 30, 36.

35.  Plaintiff and the California Class suffered harm as a result of Defendants' violations of the CLRA in that they purchased Quorn products that they would not have purchased had they known they were made of mold, and certainly not at the prices they paid.

36.  If Defendants had accurately disclosed that Quorn products were made of mold, and were not mushroom-based products, the market value of those products would be substantially less than the prices paid by Plaintiff and the California Class. Consequently, Plaintiff and the California Class uniformly suffered "out of pocket" loss as a result of Defendants' violations of the CLRA.

37.  On or about August 11, 2015, more than thirty (30) days prior to the commencement of this action and in conformance with her obligations under *Civil Code* § 1782 of the CLRA, Plaintiff, on behalf of herself and the California Class, served a CLRA Notice of Violation Letter by certified registered mail, return receipt requested on Quorn.  A copy of the letter is attached as Exhibit B.  The letter notified Defendants of its violations of the CLRA, among other laws, and requested various

corrections and remedies.  (*See* Exhibit B).  Defendants failed to make the requested corrections and/or offer the requested remedies.

38.    Accordingly, pursuant to *Civil Code* §§ 1780 and 1782 of the CLRA, Plaintiff, on behalf of herself and the California Class, is seeking actual damages in an amount to be determined at trial but not less than one thousand dollars ($1000.00) per California Class member as provide by *Civil Code* § 1780(a)(1).

39.    Plaintiff, on behalf of herself and the California Class, is further seeking an order enjoining Defendants' violations of the CLRA, including, but not limited to, an order:

(a)    Requiring Defendants to immediately remove from all packages of Quorn products sold in California any statements suggesting that the product is the same or similar to a mushroom, truffle or morel.  This includes deleting the following statement: "[T]here are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after varieties of mushroom, truffles, and morels."

(b)    Requiring Defendants to prominently disclose on the front of its product packaging in bold print and large font that "**THIS PRODUCT CONTAINS MOLD**" in order to cure the false advertising Defendants have been disseminating for years.

(c)    Requiring Defendants to prominently disclose on the back of its product packaging in California, and on the homepage of its website the following statement: **"THE 'MYCROPROTEIN' INGREDIENT IN QUORN PRODUCTS IS FERMENTED SOIL MOLD; IT IS NOT A MUSHROOM, TRUFFLE OR MOREL."**

40.    Plaintiff, on behalf of herself and the California Class, is further seeking restitution of all sums wrongfully obtained by Defendants as result of their violations of

the CLRA, including, but not limited to, the difference between what the market value of Quorn products would have been had Defendants prominently disclosed that the product contained mold and the sales price paid by Plaintiff and the California Class.

41.     Plaintiff, on behalf of herself and the California Class, is further seeking punitive damages in an amount to sufficient to deter such violations of the CLRA in the future.  Defendants' violations of the CLRA were carried out with malice, oppression and fraud and extreme indifference to the rights of Plaintiff and the California Class. They constitute intentional misrepresentations, deceit and concealment of material facts known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff and the California Class of their property and otherwise causing injury.

**SECOND CAUSE OF ACTION FOR**

**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §17200 ET SEQ.)**

42.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 41 as if fully set forth herein.

43.     The UCL prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent, or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

*DEFENDANTS' ACTS ARE FRAUDULENT AND/OR DECEPTIVE*

44.     Defendants' acts, conduct and business practices as alleged above are fraudulent and/or deceptive.

*DEFENDANTS' ACTS ARE UNFAIR*

45.     Defendants' acts, conduct and practices as alleged above are unfair. Defendants, through deceptive and misleading advertising and representations, induced Plaintiff and the California Class to purchase Quorn food products they otherwise would not have purchased.  This injury is not outweighed by any countervailing benefits to consumers or competition.

*DEFENDANTS' ACTS ARE UNLAWFUL*

46.     By engaging in the false, deceptive, and misleading conduct alleged above, Defendants have engaged in unlawful business acts and practices in violation of the UCL by violating other laws, including at a minimum the CLRA, the FAL, and other California civil statutes and common law prohibiting fraud and deceit.

47.     As a direct and proximate result of Defendants' unlawful, unfair and fraudulent business practices, Plaintiff and the California Class have been injured in fact and suffered lost money or property.  Plaintiff and the California Class purchased food products in justifiable reliance on Defendants' false and misleading representations regarding the nature of their "mycoprotein" food products, and Plaintiffs and the California Class would not have purchased any Quorn food products containing "mycoprotein" had Defendants adequately and prominently disclosed that the product contained mold, and certainly not at the prices they paid.

48.     Defendants' unlawful, unfair, deceptive and fraudulent business practices as alleged above present a continuing threat to Plaintiff, the California Class and members of the public because Defendants persist and continue to engage in such practices, and will not cease doing so unless enjoined or restrained by this Court.

49.     Under California *Business & Profession Code* § 17203, Plaintiff, on behalf of herself, California Class Members and members of the general public, seeks an order from this Court enjoining Defendants' continuing violations of the UCL, including, but not limited to, an order:

> (a)     Requiring Defendants to immediately remove from all packages of Quorn products sold in California any statements suggesting that the product is the same or similar to a mushroom, truffle or morel.  This includes deleting the following statement: "[T]here are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after varieties of mushroom, truffles, and morels."

(b)     Requiring Defendants to prominently disclose on the front of its product packaging in bold print and large font that "**THIS PRODUCT CONTAINS MOLD**" in order to cure the false advertising Defendants have been disseminating for years.

(c)     Requiring Defendants to prominently disclose on the back of its product packaging in California, and on the homepage of its website the following statement: **"THE 'MYCROPROTEIN' INGREDIENT IN QUORN PRODUCTS IS FERMENTED SOIL MOLD; IT IS NOT A MUSHROOM, TRUFFLE OR MOREL."**

50.     Plaintiff, on behalf of herself and the California Class, is further seeking restitution of all sums wrongfully obtained by Defendants as result of their violations of the UCL, including, but not limited to, the difference between what the market value of Quorn products would have been had Defendants prominently disclosed that the product contained mold and the sales price paid by Plaintiff and the California Class.

### THIRD CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §17500 et seq.)

51.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 50, as if fully set forth herein.

52.     As alleged herein, Defendants disseminated or caused to be disseminated to the general public via product packaging (at a minimum) misleading, deceptive, inadequate, and false advertising regarding "mycoprotein." This constitutes a violation of the FAL.

53.     Defendants continue to disseminate or cause to be disseminated via product packaging (at a minimum) such misleading, deceptive, inadequate and false advertising.

**FIRST AMENDED CLASS ACTION COMPLAINT**

54.     Defendants' misleading, deceptive, inadequate and false advertising regarding "mycoprotein" deceived Plaintiff and is and was likely to deceive the consuming public.

55.     Defendants knew or should have known that the statements were misleading, deceptive, inadequate and false.

56.     As a direct and proximate result of Defendants' violations of the FAL, Plaintiff and the California Class have been injured in fact and suffered lost money or property.  Plaintiff and the California Class purchased food products in justifiable reliance on Defendants' false and misleading representations regarding the nature of their "mycoprotein" food products, and they would not have purchased any Quorn food products containing "mycoprotein" had Defendants adequately and prominently disclosed that the product contained mold, and certainly not at the prices they paid.

57.     Defendants' violations of the FAL present a continuing threat to Plaintiff, the California Class and members of the public because Defendants persist and continue to engage in such practices, and will not cease doing so unless enjoined or restrained by this Court.  Accordingly, Plaintiff, on behalf of herself, California Class Members and members of the general public, seeks an order from this Court enjoining Defendants' continuing violations of the FAL, including, but not limited to, an order:

(a)     Requiring Defendants to immediately remove from all packages of Quorn products sold in California any statements suggesting that the product is the same or similar to a mushroom, truffle or morel.  This includes deleting the following statement: "[T]here are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after varieties of mushroom, truffles, and morels."

(b)     Requiring Defendants to prominently disclose on the front of its product packaging in bold print and large font that "**THIS**

**PRODUCT CONTAINS MOLD**" in order to cure the false advertising Defendants have been disseminating for years.

(c)   Requiring Defendants to prominently disclose on the back of its product packaging in California, and on the homepage of its website the following statement: **"THE 'MYCROPROTEIN' INGREDIENT IN QUORN PRODUCTS IS FERMENTED SOIL MOLD; IT IS NOT A MUSHROOM, TRUFFLE OR MOREL."**

58.   Plaintiff, on behalf of herself and the California Class, is further seeking restitution of all sums wrongfully obtained by Defendants as result of their violations of the FAL, including, but not limited to, the difference between what the market value of Quorn products would have been had Defendants prominently disclosed that the product contained mold and the sales price paid by Plaintiff and the California Class.

<u>**FOURTH CAUSE OF ACTION FOR FRAUD/FRAUDULENT CONCEALMENT**</u>

59.   Plaintiff restates and re-alleges paragraphs 1 through 58 as if fully set forth herein.

60.   On all of its product packaging, and other sales materials (such as website pages), Defendants uniformly represented to Plaintiff and the Nationwide Class as follows:

> Quorn [products] are made with mycoprotein ("myco" is Greek for "fungi") and are completely meatless and soy-free.  There are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after foods like varieties of mushroom, truffles, and morels.

(Exhibit A).  This representation is false and misleading, and misstates the qualities, characteristics and ingredients of Quorn products, in that "mycoprotein" is not the same or similar to mushrooms, truffles or morels, but is instead fermented soil mold.

**FIRST AMENDED CLASS ACTION COMPLAINT**

61.     Defendants also had a duty to disclose that "mycoprotein" is fermented soil mold because this is material information to a reasonable consumer of food products and:

(a)     Defendants had exclusive and superior knowledge of this material fact and understood that this material fact was not reasonably known to and could not have been reasonably discovered by Plaintiff and the Nationwide Class;

(b)     Defendants actively concealed this material fact from Plaintiff and the Nationwide Class; and/or

(c)     The aforementioned statement on Quorn product packaging regarding "mycoprotein" was misleading without the disclosure of the omitted material fact.

62.     Defendants violated their duty to disclose by failing to inform Plaintiff and the Nationwide Class that "mycoprotein" is fermented soil mold.

63.     Defendants' representations and omissions regarding "mycoprotein" are and were material in that a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.

64.     Defendants' misstatements of fact and failures to disclose were intentional.

65.     Plaintiff and the Nationwide Class justifiably relied on the statements and non-disclosures on Quorn's product packaging regarding "mycoprotein." But for the deceptive and misleading representations and omissions on Quorn's product packaging, Plaintiff and the Nationwide Class would not have purchased any of the Quorn products, and at a minimum certainly not at the prices they paid.

66.     As a direct and proximate result of Defendants' non-disclosure and concealment, Plaintiff and the Nationwide Class have suffered actual damages in an amount to be proven at trial.

**FIRST AMENDED CLASS ACTION COMPLAINT**

67.     Plaintiff and the Nationwide Class further seek a constructive trust to prevent unjust enrichment and to compel the restoration of property (money) to Plaintiff and the Nationwide Class which Defendants acquired through fraud.

68.     The actions of Defendants were carried out with malice, oppression and fraud and extreme indifference to the rights of Plaintiff and the Nationwide Class. They constitute intentional misrepresentations, deceit and concealment of material facts known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiff and the Nationwide Class of their property and otherwise causing injury.  They justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future.

69.     Plaintiffs also seek injunctive relief including, but not limited to, an order:

(a)     Requiring Defendants to immediately remove from all packages of Quorn products sold in the United States any statements suggesting that the product is the same or similar to a mushroom, truffle or morel.  This includes deleting the following statement: "[T]here are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after varieties of mushroom, truffles, and morels."

(b)     Requiring Defendants to prominently disclose on the front of its product packaging in bold print and large font that "**THIS PRODUCT CONTAINS MOLD**" in order to cure the false advertising Defendants have been disseminating for years.

(c)     Requiring Defendants to prominently disclose on the back of its product packaging in United States, and on the homepage of its website the following statement: **"THE 'MYCROPROTEIN' INGREDIENT IN QUORN PRODUCTS IS FERMENTED SOIL MOLD; IT IS NOT A MUSHROOM, TRUFFLE OR MOREL."**

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and on behalf of the California Class and Nationwide Class, respectfully prays for judgment against Defendants as follows:

### On the First Cause of Action:

1.      That the Court determine that the relevant claims in this complaint may be maintained as a class action;

2.      For injunctive relief including, but not limited to, an order:

    (a)     Requiring Defendants to immediately remove from all packages of Quorn products sold in California any statements suggesting that the product is the same or similar to a mushroom, truffle or morel.  This includes deleting the following statement: "[T]here are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after varieties of mushroom, truffles, and morels."

    (b)     Requiring Defendants to prominently disclose on the front of its product packaging in bold print and large font that "**THIS PRODUCT CONTAINS MOLD**" in order to cure the false advertising Defendants have been disseminating for years.

    (c)     Requiring Defendants to prominently disclose on the back of its product packaging in California, and on the homepage of its website the following statement: **"THE 'MYCROPROTEIN' INGREDIENT IN QUORN PRODUCTS IS FERMENTED SOIL MOLD; IT IS NOT A MUSHROOM, TRUFFLE OR MOREL."**

3.      For actual damages in an amount to be determined at trial but not less than one thousand dollars ($1000.00) per California Class member as provided by Civil Code § 1780(a)(1).

**FIRST AMENDED CLASS ACTION COMPLAINT**

4.     For restitution of all sums wrongfully obtained by Defendants, in an amount to be determined at trial;

5.     For punitive damages in an amount to be determined at trial;

6.     For an award of attorney's fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action to the extent permitted by law; and

7.     For such other and further relief as the Court deems just and proper.

### On the Second Cause of Action:

1.     That the Court determine that the relevant claims in this complaint may be maintained as a class action;

2.  For injunctive relief including, but not limited to, an order:

(a)     Requiring Defendants to immediately remove from all packages of Quorn products sold in California any statements suggesting that the product is the same or similar to a mushroom, truffle or morel. This includes deleting the following statement: "[T]here are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after varieties of mushroom, truffles, and morels."

(b)     Requiring Defendants to prominently disclose on the front of its product packaging in bold print and large font that "**THIS PRODUCT CONTAINS MOLD**" in order to cure the false advertising Defendants have been disseminating for years.

(c)     Requiring Defendants to prominently disclose on the back of its product packaging in California, and on the homepage of its website the following statement: "**THE 'MYCROPROTEIN' INGREDIENT IN QUORN PRODUCTS IS FERMENTED SOIL MOLD; IT IS NOT A MUSHROOM, TRUFFLE OR MOREL.**"

**FIRST AMENDED CLASS ACTION COMPLAINT**

3.      For restitution of all sums wrongfully obtained by Defendants, in an amount to be determined at trial;

4.      For prejudgment and post judgment interest to the extent permitted by law;

5.      For an award of attorney's fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action to the extent permitted by law; and

6.      For such other and further relief as the Court deems just and proper.

### On the Third Cause of Action:

1.      That the Court determine that the relevant claims in this complaint may be maintained as a class action;

2.      For injunctive relief including, but not limited to, an order:

(a)      Requiring Defendants to immediately remove from all packages of Quorn products sold in California any statements suggesting that the product is the same or similar to a mushroom, truffle or morel.  This includes deleting the following statement: "[T]here are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after varieties of mushroom, truffles, and morels."

(b)      Requiring Defendants to prominently disclose on the front of its product packaging in bold print and large font that "**THIS PRODUCT CONTAINS MOLD**" in order to cure the false advertising Defendants have been disseminating for years.

(c)      Requiring Defendants to prominently disclose on the back of its product packaging in California, and on the homepage of its website the following statement: **"THE 'MYCROPROTEIN' INGREDIENT IN QUORN PRODUCTS IS FERMENTED SOIL MOLD; IT IS NOT A MUSHROOM, TRUFFLE OR MOREL."**

3.      For restitution of all sums wrongfully obtained by Defendants, in an amount to be determined at trial;

4.      For prejudgment and post judgment interest to the extent permitted by law;

5.      For an award of attorney's fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action to the extent permitted by law; and

6.      For such other and further relief as the Court deems just and proper.

### On the Fourth Cause of Action:

1.      That the Court determine that the relevant claims in this complaint may be maintained as a class action;

2.  For injunctive relief including, but not limited to, an order:

(a)      Requiring Defendants to immediately remove from all packages of Quorn products sold in the United States any statements suggesting that the product is the same or similar to a mushroom, truffle or morel.  This includes deleting the following statement: "[T]here are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after varieties of mushroom, truffles, and morels."

(b)      Requiring Defendants to prominently disclose on the front of its product packaging in bold print and large font that "**THIS PRODUCT CONTAINS MOLD**" in order to cure the false advertising Defendants have been disseminating for years.

(c)      Requiring Defendants to prominently disclose on the back of its product packaging in the United States, and on the homepage of its website the following statement: "**THE 'MYCROPROTEIN' INGREDIENT IN QUORN PRODUCTS IS FERMENTED SOIL MOLD; IT IS NOT A MUSHROOM, TRUFFLE OR MOREL.**"

3.    For restitution of all sums wrongfully obtained by Defendants, in an amount to be determined at trial;

4.    For damages in an exact amount to be proven at trial;

5.    For punitive damages in an exact amount to be proven at trial;

6.    For disgorgement of all profits wrongfully earned by Defendants;

7.    For a constructive trust;

8.    For an award of attorney's fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action to the extent permitted by law;

9.    For prejudgment and post judgment interest to the extent permitted by law;

10.    For such other and further relief as the Court deems just and proper.

Dated:  March 30, 2016                    EAGAN AVENATTI, LLP


                                          By:    _/s/ Jason M. Frank_____
                                                 Jason M. Frank
                                                 Attorneys for Plaintiff
                                                 KIMBERLY BIRBROWER




### **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  March 30, 2016                    EAGAN AVENATTI, LLP


                                          By:    _/s/ Jason M. Frank_____
                                                 Jason M. Frank
                                                 Attorneys for Plaintiff
                                                 KIMBERLY BIRBROWER

**FIRST AMENDED CLASS ACTION COMPLAINT**