THEODORE H. FRANK (SBN 196332)
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW 7th Floor
Washington, DC 20005
Voice: (202) 331-2263
Email: ted.frank@cei.org

*Attorney for Objector Alida Kass*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BIRBROWER, an individual,<br><br>            Plaintiff,<br><br>  vs.<br><br>QUORN FOODS, INC., a Delaware Corporation and DOES 1 through 100, inclusive,<br><br>            Defendant.<br><br>Alida Kass,<br>            Objector. | Case No. 2:16-cv-01346-DMG (AJW)<br><br>**DECLARATION OF THEODORE H. FRANK IN SUPPORT OF KASS OBJECTION**<br><br>Date:      September 1, 2017<br>Time:     10:30 a.m.<br>Location:  Courtroom 8C |

*Birbrower v. Quorn Foods, Inc.,* 2:16-cv-01346-DMG (AJW)        1
DECLARATION OF THEODORE H. FRANK

I, Theodore H. Frank declare, as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I am the attorney for objector Alida Kass in this matter.

3. I founded the Center for Class Action Fairness (the "Center" or "CCAF") in 2009. In 2015, we merged with the non-profit Competitive Enterprise Institute ("CEI").

4. The Center's mission is to litigate on behalf of class members against unfair class action procedures and settlements. It has won tens of millions of dollars for class members and received national acclaim for its work. *See, e.g.*, Gina Passarella, *Third Circuit Vacates $18.5 Mil. Cy Pres Award in Baby Products Class Action*, L. INTELLIGENCER (Feb. 20, 2013); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES (Aug. 13, 2013) (calling me "the leading critic of abusive class action settlements"); Jeffrey B. Jacobson, *Lessons From CCAF on Designing Class Action Settlements*, Law360 (Aug. 6, 2013) (discussing Center's track record); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J. (Oct. 31, 2011).

5. The Center has been successful, winning fourteen federal appeals decided to date, with dozens more victories, partial victories, or agreements to improve settlements in district courts. *In re Target Corp. Customer Data Security Breach Litig.*, __F.3d__, 2017 U.S. App. LEXIS 1767 (8th Cir. Feb. 1, 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, No. 13-55373 (9th Cir. Mar. 19, 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, Nos. 12-15757, 12-15782, 2014 U.S. App. LEXIS 7708 (9th Cir. Apr. 24, 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).

6. CCAF has won more than a hundred million dollars for class members by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. *See, e.g., McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing fees, and thus increasing class recovery, by more than $26 million to account for a "significantly overstated lodestar"); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) (parties nullify objection by eliminating *cy pres* and augmenting class fund by $2.5 million).

7. In my experience, class counsel often responds to CCAF objections by making a variety of *ad hominem* attacks. In an effort to anticipate such attacks and to avoid collateral litigation over a right to file a reply, I discuss and refute the most common ones below.

8. CCAF's mission sets it apart from so-called "professional objectors," which are for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees. *See* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003) (public interest groups are not professional objectors). This is not CCAF's modus operandi. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; it has never withdrawn an objection in exchange for payment to CCAF. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. Indeed, tax law would not permit any employees of CEI to personally profit from this objection. The difference between a so-called "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as myself has to triage dozens of requests for *pro bono* representation and dozens of unfair

class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a "baseless objection." CCAF objects to only a small fraction of the number of unfair class action settlements it sees; indeed, I personally object to only a fraction of the number of unfair class action settlements where I am a class member. (While one district court called me a "professional objector" in a broader sense, that court stated that it was not meant pejoratively, and awarded CCAF fees for a successful objection and appeal that improved the settlement for the class. *Dewey v. Volkswagen*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012).)

9. Indeed, CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it has initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *Pearson v. NBTY, Inc.*, No. 11-cv-7972 (N.D. Ill.); *see also* Jacob Gershman, *Lawsuits Allege 'Objector Blackmail' in Class Action Litigation*, Wall Street Journal Law Blog (Dec. 7, 2016).

10. CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member has the opportunity cost of not having time to pursue a meritorious objection in another case. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to use, and make painful decisions several times a year picking and choosing which cases to pursue, and even which issues to pursue within the case. CCAF turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair.

11. While I am often accused of being an "ideological objector," the ideology of the Center's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that I oppose all class actions and am seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been

*Birbrower v. Quorn Foods, Inc.,* 2:16-cv-01346-DMG (AJW)    4
DECLARATION OF THEODORE H. FRANK

writing and speaking about class actions publicly for nearly a decade, including in testimony before state and federal legislative subcommittees, and I have never asked for an end to the class action, just proposed reforms for ending the abuse of class actions and class-action settlements. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food. As a child, I admired Ralph Nader and consumer reporter Marvin Zindler (whose autographed photo was one of my prized childhood possessions), and read every issue of *Consumer Reports* from cover to cover. I have focused my practice on conflicts of interest in class actions because, among other reasons, I saw a need to protect consumers that no one else was filling, and as a way to fulfill my childhood dream of being a consumer advocate. I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in my certiorari petition filed in 2015 in *Frank v. Poertner*. On multiple occasions, successful objections brought by CCAF have resulted in new class-action settlements where the defendants pay substantially more money to the plaintiff class without CCAF objecting to the revised settlement. Furthermore, I am the class representative in a well-publicized TCPA class action brought in the Eastern District of Missouri by a prominent plaintiffs' firm.

12. On October 1, 2015, after consultation with its board of directors and its donors, the Center merged with the much larger Competitive Enterprise Institute ("CEI"), to take advantage of the economies of scale realized by eliminating some of the enormous fixed costs required for bureaucratic administration of and regulatory compliance by non-profits. The Center was on financially sound footing, and consistently growing its assets faster than its spending, but a disproportionate amount of attorney time was taken up with non-litigation tasks, and we were not large enough to justify hiring full-time communications, fundraising, or regulatory-compliance staff, which I felt was limiting our effect.

13. Prior to its merger with CEI, the Center never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than the

Center, does take a percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or case management. In the event of a breach of this commitment, I am permitted to treat the breach as a constructive discharge entitling me to substantial severance pay. CEI has honored that commitment.

14. None of the corporate donors to CEI have earmarked contributions to CCAF. I am unaware of whether there exist any corporate donors to CEI who take a position on the underlying litigation in this case, though it is possible one exists. CEI pays me on a salary basis that does not vary with the result in any case. I do not receive a contingent bonus based on success in any case, a structure that would be contrary to IRS restrictions.

15. For example, I am personally the objector-appellant in a pending Ninth Circuit appeal against the *cy pres* settlement of a corporate donor to CEI who has contributed substantially to CEI. No one at CEI has complained that I am currently prosecuting that appeal against the donor, sought to interfere with the pending appeal, or even told me that I was adverse to the donor. I only discovered that information by happenstance when looking at the corporate donor's website.

16. Similarly, CEI represented an objector to the massive Volkswagen diesel MDL settlement, arguing that the settlement structure short-changed class members by hundreds of millions of dollars. I learned only after a plaintiffs' attorney opposed our motion for leave to file an *amicus* brief in that case that Volkswagen had previously donated to CEI. No one at CEI had told me Volkswagen was a donor, or asked me to refrain from litigating against a donor's interests.

17. I have no idea whether Quorn or its private corporate parent has any relationship with CEI, and have not investigated the question.

18. My understanding is that CEI's litigation history includes several lawsuits against the interests of some of its corporate donors. Based on this and based on my own experience

working at CEI since 2015, I have every confidence that CCAF will continue to have the autonomy for which I negotiated.

19.   I am a class member in this case. CEI's original plan was to object to this settlement using me as a *pro se* objector. I then learned that my friend Alida Kass was a class member, and wished to object; we decided her purchase record made her a preferable objector to me. I purchased Quorn products once in 2012 or 2013, did not like the taste, and did not repeat the purchase. Because of the difficulty of retrieving a credit-card statement that old, and because I decided to represent Ms. Kass rather than make a *pro se* objection, I did not make a claim. I've previously eaten many varieties of bleu cheese, cuitlacoche, soy sauce, and many other fungus- and mold-related foods.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 30, 2017, in Washington, DC.

*/s/ Theodore H. Frank*  
Theodore H. Frank

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically served the foregoing on all CM/ECF participating attorneys at their registered email addresses, thus effectuating electronic service under S.D. Cal. L. Civ. R. 5.4(d).

DATED this 30th day of March, 2017.

*/s/ Theodore H. Frank*
Theodore H. Frank

# CERTIFICATE OF SERVICE PURSUANT TO CLASS NOTICE AND PRELIMINARY APPROVAL ORDER

Pursuant the requirements of class notice and Preliminary Approval Order, Dkt. 39 ¶¶ 20-21, I hereby certify that on this day I caused service of the forgoing on the following parties, postmarked or emailed as of this date:

| | |
|---|---|
| Atticus Administration<br>Attn: Objection<br>P.O. Box 582959<br>Minneapolis, MN 55458 | *Via First Class Mail* |
| Jason M. Frank, Esq.<br>Scott H. Sims, Esq.<br>Frank Sims & Stolper LLP<br>19800 MacArthur Blvd.<br>Suite 855<br>Irvine, CA 92612<br>eyuhl@yulcarr.com | *Via First Class Mail and Email* |
| Eric Y. Kizirian, Esq.<br>Lewis Brisbois Bisgaard & Smith, LLP<br>633 West 5th Street<br>Suite 4000<br>Los Angeles, CA 90071 | *Via First Class Mail* |

DATED this 30th day of March, 2017.

*/s/ Theodore H. Frank*
Theodore H. Frank

*Birbrower v. Quorn Foods, Inc.,* 2:16-cv-01346-DMG (AJW)   8
DECLARATION OF THEODORE H. FRANK