JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BIRBROWER, an individual,<br><br>            Plaintiff,<br><br>    vs.<br><br>QUORN FOODS, INC., a Delaware Corporation,<br><br>            Defendant. | Case No.: CV 16-1346 DMG (AJWx)<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD [45][71]; FINAL JUDGMENT** |

1       WHEREAS, on January 22, 2016, Plaintiff Kimberly Birbrower ("Plaintiff") filed a proposed class action against Defendant Quorn Foods, Inc. ("Defendant" or "Quorn") in California Superior Court;

      WHEREAS, on February 26, 2016, this action was timely removed to this Court;

      WHEREAS, on March 30, 2016, Plaintiff filed the operative First Amended Complaint ("FAC") in this action;

      WHEREAS, on or about December 14, 2016, Plaintiff, on behalf of herself and a proposed nationwide class, on the one hand, and Defendant, on the other hand, reached a proposed Settlement of the claims at issue in this action (the "Settlement");

      WHEREAS, on February 6, 2017, the Court entered its Order Preliminarily Approving the Settlement, certifying the proposed class for settlement purposes only (the "Settlement Class"), appointing Class Counsel and the Claims Administrator, and preliminarily approving and directing Notice of Settlement to the Class (including notice of the proposed Settlement and a final fairness hearing thereon, as well as instructions on how to submit a Claim, request exclusion from the Settlement Class, and object to the proposed Settlement) [Doc. # 39];

      WHEREAS, notice to the Settlement Class was subsequently made pursuant to the Court's direction, along with notice to the appropriate regulators pursuant to 28 U.S.C. § 1715;

      WHEREAS, on March 1, 2017, Plaintiff and Class Counsel filed a Motion for Attorneys' Fees, Costs and an Incentive Award [Doc. # 45];

      WHEREAS, on March 23, 2017, the Center for Science in the Public Interest ("CSPI") filed a motion to file as *amicus curiae* a brief in opposition to the Settlement [Doc. # 46], which the Court subsequently granted [Doc. # 76];

      WHEREAS, on March 30, 2017, Alida Kass filed an objection to the Settlement and/or Motion for Attorneys' Fees, Costs and an Incentive Award [Doc. # 48], and on June 1, 2017, Kass filed a supplement to that objection [Doc. # 67];

      WHEREAS, the following individuals also filed objections to the Settlement

and/or Motion for Attorneys' Fees, Costs and an Incentive Award: Janet Lande, Caren Wilson, Jennifer Ellis, and Jeanine Boyers;

WHEREAS, on July 21, 2017, Plaintiff filed a Motion for Final Approval of the Settlement, which responded to CSPI's arguments raised in its *amicus* brief and to the specific objections raised by Objectors Kass, Lande, Wilson, Ellis, and Boyers [Doc. # 71];

WHEREAS, on August 25, 2017, the Parties filed a Joint Stipulation attaching a mock-up of the changes to Quorn's product packaging agreed to as part of the Settlement to be incorporated into any final order approving the Settlement [Doc. # 77];

WHEREAS, on August 28, 2017, CSPI withdrew its opposition to the Settlement based on its review of the mock-up of the changes to Quorn's product packaging set forth in the August 25, 2017 Joint Stipulation [Doc. # 78]; and

WHEREAS on September 1, 2017, the Court held a final fairness hearing on the proposed Settlement, the Motion for Attorneys' Fees, Costs and an Incentive Award and the objections thereto;

NOW, THEREFORE, based upon the Settlement and all of the filings, records and proceedings herein, and the arguments of counsel for the Parties and Objector Kass at the final fairness hearing, and it appearing to the Court upon examination that the Settlement is fair, reasonable and adequate, that the Notice provided to the Settlement Class complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process and constituted the best notice practicable under the circumstances and that the requested award of attorneys' fees, costs and an incentive award are fair, reasonable and appropriate;

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. For purposes of this Order, the Court adopts and incorporates herein by reference all defined terms set forth in the Settlement [Doc. # 32-2]. All capitalized terms herein have the definitions set forth in the Settlement unless otherwise indicated.

2. The Court has jurisdiction over the subject matter of this action, the Parties and all proposed members of the Settlement Class.

### Final Approval of the Settlement

3. The Settlement Class includes "All persons in the U.S. who purchased Quorn Products in the U.S. for personal or household consumption (and not for resale) during the Class Period of January 26, 2012 through December 14, 2016." Excluded from the Settlement Class are: (a) Quorn, its related entities, parent companies, subsidiaries, and affiliates, and their respective officers, directors, and employees, (b) all persons claiming to be subrogated to the rights of Class Members, (c) individuals who previously released their claims against Quorn, (d) individuals who assert claims for personal injuries arising from their purchase and consumption of Quorn Products, and (e) any judge to whom this matter was assigned, and his or her immediate family (spouse, domestic partner, or children).

4. The following individuals are also excluded from the Settlement Class because they filed timely requests for exclusion: Sue Birch, Charles Blamphin, and Davey Bean.

5. The Court has appointed Jason M. Frank and Scott H. Sims of Frank Sims & Stolper LLP and Eric F. Yuhl and Colin A. Yuhl of Yuhl Carr LLP to serve as Class Counsel.

6. The Court has appointed Plaintiff Kimberly Birbrower to serve as the Class Representative.

7. The Court has appointed Atticus Administration LLC as the Claims Administrator.

8. The Court finds the Settlement Agreement was the product of serious, informed, non-collusive negotiations conducted at arms' length by the Parties with the assistance of an experienced mediator. In making this finding, the Court considered the nature of the claims, the amounts and kinds of benefits provided in the Settlement, the allocation of Settlement proceeds among the Class Members, and the fact that a

settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial, and that it avoids the usual difficulties of complex litigation including the various delays and time consuming appeals that may impede any potential recovery by the Class. The Court further finds that the terms of the Settlement do not have any obvious deficiencies and do not improperly grant preferential treatment to any individual Class Member.

9. For the reasons stated herein and on the record at the September 1, 2017 final fairness hearing, the Court finds the Settlement is fair, reasonable and adequate. The Settlement provides a monetary benefit that is the equivalent of a full refund for those Class Members who were able to present receipts for their purchases, and close to full refunds for those Class Members who were able to provide Alternative Proof of Purchase documentation. Further, the Settlement, as modified by the August 25, 2017 Joint Stipulation, provides that Quorn will modify its disclosures regarding Mycoprotein on its product labeling and promotional materials to address the specific concerns that were raised by Plaintiff in her FAC.

10. The Court finds that the reaction of the Class to the Settlement further supports final approval of the Settlement. According to the Claims Administrator, there were approximately 3,312 valid Claims submitted by Class Members and only three (3) requests for exclusion. In addition, there were only five (5) objections to the terms of the Settlement (not including the withdrawn opposition of CSPI), and three of those objections were form letters supporting the now withdrawn opposition of CSPI.

11. The Court finds the claims process was fair, reasonable and adequate under the circumstances of this case. As noted above, a Class Member could submit a Claim for a full refund if that Class Member provided a receipt for such a purchase. Class Members who did not have their receipts could submit Claims for $5 per month, for a maximum of $40 per year for each year of the five-year Class Period, for a total of $200, by providing credit card or bank statements, or non-itemized receipts, demonstrating that they made purchases at stores that sold Quorn products during the

Class Period. This provided a fair and reasonable alternative for Class Members to submit Claims for monetary relief without a receipt while preventing fraudulent Claims.

12. The Court has reviewed the Declaration of James Baker, M.D., the chief executive officer for the Food Allergy Research and Education ("FARE") organization. [Doc. # 71-11.] The Court finds that FARE is an appropriate *cy pres* recipient in this case given that the organization is dedicated to, among other things, improving the disclosure of food allergens, such as mold, on consumer products, as well as its overall mission of educating the public about food allergies and developing treatments for such allergies. Accordingly, there is a driving nexus between the claims at issue in this case and FARE, and Class Members will therefore benefit from the *cy pres* distribution.

**Distribution of Monetary Relief**

13. Pursuant to the Declaration of Christopher Longley, the Claims Administrator received 3,526 timely Claims from the Settlement Class of which approximately 3,312 Claims were deemed valid for a combined total of $735,856 in valid Claims. [Doc. # 71-6.]

14. The Claims Administrator is hereby ordered to distribute the money from the Initial Settlement Fund to those Class Members who submitted valid Claims pursuant to the terms and timelines set forth in the Settlement, as amended by the Court's subsequent Orders pertaining thereto.

**Injunctive Relief**

15. Pursuant to the terms of the Settlement, and according to the timelines set forth therein, Defendant is hereby ordered to forever remove from its product packaging and all other forms of advertising the following language or its functional equivalent: "There are believed to be over 600,000 varieties of fungi in the world, many of which are among the most sought after foods like varieties of mushrooms, truffles, and morels."

16. Pursuant to the terms of the Settlement [Doc. # 32-2] and the Parties' subsequent August 25, 2017 Joint Stipulation [Doc. # 77], and according to the

timelines set forth therein, Defendant is hereby ordered to disclose the following information about Mycoprotein at or near the top of the side or back of Quorn's product packaging, directly above the nutritional facts and ingredient information, and in bold letters:

> *Mycoprotein™: Mycoprotein is a mold (member of the fungi family). There have been rare cases of allergic reactions to products that contain Mycoprotein.

The font size, location and graphic display of this disclosure shall be consistent with the exemplar of the product packaging attached to the August 25, 2017 Joint Stipulation, which is attached hereto as Exhibit A and incorporated herein by this reference.[1] Further, an asterisk must be immediately adjacent to the term "Mycoprotein" wherever else that term appears on the product packaging in order to direct consumers to the above-referenced "Mycoprotein" disclosure.

17.   The Court has reviewed the Declaration of Dr. Thomas Maronick and his findings (through the use of consumer surveys) that the Settlement's changes to the product packaging effectively disclose that Mycoprotein is a mold. [Doc. # 71-9.] The Court finds these changes to the product packaging are important, especially given the evidence presented that at least some consumers are adversely affected by mold and have allergic reactions to mold. The Court further concludes that Dr. Maronick's finding that the changes in the product packaging will require a reduction in the retail price for Quorn products worth approximately $3.6 million per year in sales is credible and provides a reasonable method to measure the monetary value of the Settlement's injunctive relief. The Court has considered the arguments by the objectors challenging

---

[1] While the font size of the disclosure may change depending on the size of the particular Quorn package, the relative font size of the disclosure as compared to the surrounding text on the package must remain consistent, as set forth in the exemplar attached as Exhibit A.

the value and effectiveness of the injunctive relief, and disagrees with and overrules those objections based on the evidence presented to the Court.

### Final Approval of Notice Plan

18. The Court finds that the notice given to the Class was the best notice practicable under the circumstances of this case, and that the notice complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

19. The notice given by the Class Administrator constituted due and sufficient notice to the Settlement Class, and adequately informed members of the Settlement Class of how to object to the Settlement and of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement.

20. The notice plan included a successful digital notice campaign that was delivered to approximately 83% of the target audience of vegetarian and vegan customers (*i.e.*, Quorn's target market), with an average frequency viewer rate of 3.33 views per person. The notice plan also included published notice in *USA Today*, as well as two national press releases that were covered in 208 publications throughout the United States. Further, direct email or mail notice was sent to over 13,000 potential Class Members.

21. Direct notice to all Class Members in this case was not reasonable, practicable or possible under the circumstances as Defendant did not possess a list of records of all of its customers. The Parties and the Claims Administrator, however, undertook reasonable efforts to directly contact potential Class Members, particularly those who had previously contacted Quorn about its products.

22. The Court has considered and rejected the objections to the adequacy of the notice plan, including the arguments of Objector Kass that subpoenas needed to be sent to retailers and internet sellers of Quorn products in an attempt to identify additional Class Members. Based upon the evidence presented, the Court finds that sending subpoenas to retailers and/or internet sellers would be difficult and unduly expensive and thus was not reasonable or practicable under the circumstances. The

Court also has considered and rejected Kass' objection that Class Counsel filed their motion for attorneys' fees late. Class Counsel filed their initial motion on a timely basis on March 1, 2017 [Doc. # 45], but subsequently filed a response to address the objections [Doc. ## 48, 67, 71, 72].

### Award of Attorneys' Fees and Costs

23. The Court finds Class Counsel's request of $1,303,310 in attorneys' fees to be fair and reasonable given the results achieved, the risks of litigation, the skill and experience of the attorneys, the contingent nature of the fee, the complexity and novelty of the issues presented, the promptness of the results achieved by the Settlement, the amount of fee awards in similar cases and the fact that this recovery will not in any way reduce the amount of monetary relief available to the Settlement Class.

24. The Court finds that the requested attorneys' fees are supported by the percentage of benefit method used to determine appropriate fee awards. The Settlement requires Defendant to pay a non-reversionary $2.5 million into an Initial Settlement Fund. Further, based on the Declaration of Dr. Maronick, the Court finds that the injunctive relief provided by the Settlement has a value of at least $3.6 million. Based on the combination of these amounts alone, the total value of the Settlement is at least $6.1 million. Consequently, a fee award of $1,303,310 is less than 21.4% of the Settlement value, which is below the 25% benchmark for fee awards commonly approved in the Ninth Circuit.

25. The Court has reviewed the timesheets submitted by Class Counsel as of July 21, 2017. The Court finds that the hours billed therein were reasonable and the descriptions sufficiently detailed. The Court determines Class Counsel's lodestar to be approximately $693,999.50 (without any multiplier) not including the additional time incurred by Class Counsel after July 21, 2017.

26. The Court finds that Class Counsel's rates are fair and reasonable and commensurate with the prevailing market rates in Los Angeles and the Central District of California for this type of case and for similar services by lawyers of reasonably

comparable skill, experience, and reputation. Those rates are $900 (Jason Frank), $850 (Scott Sims), $1,000 (Eric Yuhl) and $600 (Colin Yuhl).

27. The Court determines that a multiplier is appropriate under the circumstances of this case. In making this determination the Court has concluded the following:

    a. Class Counsel took this case on a full contingency, and in doing so expected a risk enhancement if they prevailed.

    b. Class Counsel's hourly rates are commensurate with market rates for hourly defense counsel of their experience, are reasonable based upon their experience and skill level, and do not reflect the risk associated with this being a contingency case.

    c. This case was very risky for Class Counsel. Class Counsel faced numerous legal and factual obstacles, and Quorn had successfully defeated similar litigation in the past.

28. The approved fee award will result in a 1.88 lodestar multiplier, which the Court finds is fair and reasonable under the circumstances.

29. The Court has considered the objection to "block billing" in Class Counsel's timesheets and declines to reduce Class Counsel's lodestar. The descriptions in the timesheets allowed the Court to adequately review Class Counsel's time for reasonableness.

30. The Court hereby grants Class Counsel's request for costs and expenses in the amount of $46,690, which the Court finds were reasonably and necessarily incurred in prosecuting this litigation to its conclusion.

31. Notwithstanding the fact that the $1,303,310 attorneys' fees request is fair and reasonable, the Court finds that it should be reduced pursuant to the terms of the Settlement. The Settlement provides that "in no event will the combined total of the Administration Costs, Class Counsel's Fees and Costs and Service Award exceed One Million Five-Hundred Thousand Dollars ($1,500,000)." The Settlement further

provides that Class Counsel's Fees and Expenses shall not "exceed One Million Three-Hundred Fifty Thousand dollars ($1,350,000.00)[.]" Class Counsel's total request for attorneys' fees and costs is precisely $1,350,000, and as noted below, the Class Administrator's Costs are approximately $200,000, and Plaintiff is entitled to a $5,000 incentive award. To ensure that the total amount of "Administration Costs, Class Counsel's Fees and Costs and Service Award [does not] exceed One Million Five-Hundred Thousand Dollars ($1,500,000)[,]" Class Counsel's fee award shall be reduced to account for the excess in the Claims Administrator's costs and for Plaintiff's incentive award.[2] Accordingly, the Court awards as attorneys' fees to Class Counsel the amount remaining from the $1,500,000 Settlement Fund after all administrative costs, Plaintiff's $5,000 incentive award, and $46,690 in litigation costs have been paid from the Settlement Fund.

### Administration Costs

32. The Claims Administrator's total costs were approximately $200,000, which exceeded the $150,000 amount initially set aside in the Settlement for Administrative Costs. The additional $50,000 amount was incurred in order to provide additional notice to the Class, including providing published notice in *USA Today* and digital notice on the *Oprah Winfrey* website. Pursuant to the Settlement, the Initial Settlement Fund shall be used to pay the Claims Administrator for any remaining costs that the Administrator has not yet recouped.

### Incentive Award

33. The Court approves an incentive award of $5,000 to Plaintiff Kimberly Birbrower. Plaintiff has spent significant time and effort assisting Class Counsel in this action, notwithstanding her obligations as a single mother and the fact that she would

---

[2] During the September 1, 2017 final fairness hearing, Class Counsel offered to reduce the attorneys' fee award to ensure that the total amount of Administration Costs, Class Counsel's Fees and Costs, and Service Award would not exceed the $1,500,000 limit. The Court notes, however, that Class Counsel may have been under the misimpression that the Class Administrator's fees exceeded the $150,000 limit thereon by only approximately $5,000. As it turns out, the Class Administrator's total costs are closer to $200,000.

otherwise be entitled to only the benefits that are enjoyed by the rest of the Settlement Class. The Court, accordingly, finds that a $5,000 incentive award is fair and reasonable under the circumstances.

### *Cy Pres* Award

34. The amounts remaining in the Initial Settlement Fund of $2.5 million, after the payment of (a) the valid Claims to the Settlement Class Members in the amount of approximately $735,856, (b) the attorneys' fees award provided above, (c) costs in the amount of $46,690, (d) an incentive award in the amount of $5,000, and (d) the Claims Administrator's total costs (expected to be approximately $200,000), shall be distributed to FARE in accordance with the terms and timelines of the Settlement.

### **Objections**

35. The Court has reviewed all five (5) objections to the Settlement, along with the withdrawn *amicus* opposition brief of CSPI.

36. The Court finds that Objectors Janet Lande, Caren Wilson, Jennifer Ellis and Jeanine Boyers all failed to comply with the Court's Preliminary Approval Order' requirement that "[i]n order for an objection to be valid, the objection must include . . . documents sufficient to allow the Parties to confirm the objector is a member of the Settlement Class." The Court, accordingly, finds those objections invalid and overrules them on that basis.

37. Despite overruling the objections from Lande, Wilson, Ellis, and Boyers, the Court has considered their arguments. With the exception of the objections from Boyers, these objectors provided a form letter agreeing with the opposition *amicus* brief filed by CSPI. Given that CSPI has withdrawn its opposition brief after giving the Parties its input on the changes to the product packaging, the Court finds that these objectors' concerns have been adequately addressed, and are further overruled on that basis.

38. With respect to the remaining objections filed by Jeanine Boyers and Alida Kass, for the reasons stated herein and on the record at the September 1, 2017 final

fairness hearing, the Court hereby overrules those objections in their entirety.

## **Dismissal and Retention of Jurisdiction**

39. Upon the Effective Date of this Settlement, this Action and all of the Released Claims are dismissed with prejudice.

40. Upon the Effective Date of this Settlement, Plaintiff and the members of the Settlement Class, on behalf of themselves and each of the Releasing Parties, shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally and forever waived, released, relinquished, and discharged all Released Claims against Defendant and the Release Parties, regardless of whether such Settlement Class Member submitted a Claim or cashes a settlement check.

41. All Settlement Class Members who have not made their objections to the Settlement in the manner provided in the Notice of Settlement are deemed to have waived any objections by appeal, collateral attack, or otherwise.

42. All Settlement Class Members who failed to properly file requests to be excluded from the Settlement Class by the exclusion deadline are bound by the terms and conditions of the Settlement and this Final Judgment and release and forever discharge the Released Parties from all Released Claims. As noted above, the three individuals who timely requested exclusion from the Settlement Class are Sue Birch, Charles Blamphin, and Davey Bean.

43. The Court retains jurisdiction over the Settling Parties, the members of the Settlement Class, and this Action, only with respect to matters arising out of, or in connection with, the Settlement, and may issue such orders as may be necessary to implement the terms of the Settlement.

44. In the event that the Settlement is terminated in accordance with its terms, (a) this Final Judgment shall be rendered null and void and shall be vacated *nunc pro tunc*, and (b) this Action shall proceed as provided in the Settlement.

45. There is no just reason for delay, and this is a final, appealable order as of the date when it is stamped as received for filing.

46. Final judgment shall be entered herein.

**IT IS SO ORDERED.**

DATED: September 11, 2017

                                                             _____
                                                             DOLLY M. GEE
                                                             UNITED STATES DISTRICT JUDGE

**Exhibit A**

# Quorn™
### Dedicated to MEAT-FREE

## Meat-free Chicken Nuggets

3 BILLION Delicious Meals ENJOYED WORLDWIDE

KEEP FROZEN
For Best Before, see side of pack

**NET WT 10.6 OZ (300g)**




NON-GMO SUSTAINABLE PROTEIN ✓

---

**Quorn Nuggets are delicious, easy to prepare and are sure to be loved by the whole family.**

 LOW SATURATED FAT   HIGH PROTEIN

**Mycoprotein™\*** is a nutritious form of quality protein that's naturally low in saturated fat and high in protein and fiber.

✓ It is produced by the age-old process of fermentation
✓ It is a source of all 9 essential amino acids
✓ We do not use any ingredients derived from genetically modified sources. To learn more about our sustainability credentials please visit quorn.com/sustainability

### for Best Results...


15 MINS

**Oven:** Pre-heat to 425ºF. Place one layer of frozen **Quorn** Nuggets on a cookie sheet. Bake for 12-15 minutes, turning over halfway through heating time.


2 MINS

**Microwave:** Line a microwaveable plate with two layers of paper towels. Place one layer of frozen **Quorn** Nuggets on top. **6-8 Nuggets:** Heat on high for 2 minutes, turning halfway through heating time. **Full box of Nuggets:** Heat on high for 3-3½ minutes turning halfway through heating time.

All ovens vary, heating times are approximate. Always cook until piping hot before eating.

To discover delicious recipes and other great **Quorn** products visit quorn.us

f  t  

Best when used by
See storage instructions.

---

**\*Mycoprotein™:** Mycoprotein is a mold (member of the fungi family). There have been rare cases of allergic reactions to products that contain Mycoprotein.

## Nutrition Facts
Serving Size 3-4 Nuggets (85g)
Servings per Container 3.5

| Amount Per Serving | |
|---|---|
| Calories 210 | Calories from Fat 80 |
| | %Daily Value\* |
| **Total Fat** 9g | **14%** |
| Saturated Fat 1g | **5%** |
| Trans Fat 0g | |
| **Cholesterol** 5mg | **2%** |
| **Sodium** 410mg | **17%** |
| **Total Carbohydrate** 26g | **9%** |
| Dietary Fiber 3g | **12%** |
| Sugars 0g | |
| **Protein** 10g | |

Vitamin A 0% • Vitamin C 0%
Calcium 0% • Iron 2%

\* Percentage Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

Calories per Gram
Fat 9  •  Carbohydrate 4  •  Protein 4

**Ingredients:** Mycoprotein™\* (41%), Wheat Flour, Canola Oil, Rehydrated Egg White, Wheat Starch. Contains 2% or less of Natural Flavor from Non-Meat Sources (contains Yeast, Salt, Onion), Potato Dextrin, Salt, Wheat Gluten, Dextrose, Whole Egg & Egg White, Pea Fiber, Milk Proteins, Firming Agents: Calcium Chloride, Calcium Acetate; Turbinado Sugar, Spices, Yeast.

**Allergy Advice:** Contains Egg, Milk & Wheat.

**Storage Instructions:** Freeze below -18 degrees. Do not refreeze once thawed. Once cooked, **Quorn** Nuggets will keep for up to 24 hours when refrigerated.

**Our Promise to you**
We hope you enjoyed this **Quorn** product. But if you're not totally satisfied, please return all packaging to **Quorn** Foods Inc. PO Box 10789, Chicago, IL 60610.

Distributed by Quorn Foods Inc. Chicago IL **Quorn** and the **Quorn** logo are trademarks of Marlow Foods Ltd., and are used under license in the USA by **Quorn** Foods Inc. Product of the UK.

---

# Quorn™
### Dedicated to MEAT-FREE

## Meat-free Chicken Nuggets

3 BILLION Delicious Meals ENJOYED WORLDWIDE

Serving Suggestion

NON-GMO SUSTAINABLE PROTEIN ✓

KEEP FROZEN
For Best Before, see side of pack
**NET WT 10.6 OZ (300g)**

---


Quorn™
Dedicated to MEAT-FREE

**Meat-free Chicken Nuggets**


Printed on recyclable carton.

Suitable for vegetarians


8 33735 00006 5

MPS0273/20
QADJ801001